IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FLASH SEATS, LLC,  :
                         Plaintiff,  :
                         :
v.  :  Civ. No. 07-575-LPS
                         :
PACIOLAN, INC.,  :
                         Defendant.  :

Brian T. Moriarty, Esquire and Colin C. Durham, Esquire of HAMILTON, BROOK, SMITH & REYNOLDS, P.C., Concord, MA.

John G. Day, Esquire and Lauren E. Maguire, Esquire of ASHBY & GEDDES, Wilmington, DE.

    Attorneys for Plaintiff.

Daralyn J. Durie, Esquire and Clement S. Roberts, Esquire of KEKER & VAN NEST, LLP, San Francisco, CA.

Jack B. Blumenfeld, Esquire and Julia Heaney, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE.

    Attorneys for Defendant.

**MEMORANDUM OPINION**

September 28, 2011
Wilmington, Delaware

*[signature]*

**STARK, U.S. District Judge:**

Pending before me are three motions: (1) the Motion for Reconsideration of Portions of the January 19, 2010 Memorandum Opinion and Order (Docket Item ("D.I.") 118 and, hereinafter, "Motion to Reconsider") filed by plaintiff Flash Seats, LLC ("Flash Seats" or "Plaintiff"); (2) the Motion for Leave to File Limited Response to Defendant Paciolan, Inc.'s Answering Brief in Opposition to Flash Seats, LLC's Motion for Reconsideration of the January 19, 2010 Opinion and Order (D.I. 120 and, hereinafter, "Leave Motion") filed by Flash Seats; and (3) the Motion for Summary Judgment (D.I. 123 and, hereinafter, "Summary Judgment Motion") filed by defendant Paciolan, Inc. ("Paciolan" or "Defendant'). For the reasons discussed below, the Court will deny Plaintiff's Motion to Reconsider, and will grant Plaintiff's Leave Motion as well as Defendant's Summary Judgment Motion.

## I. BACKGROUND

This is a patent infringement case brought by Flash Seats against Paciolan on September 24, 2007, alleging infringement of U.S. Patent No. 6,496,809 ("the '809 Patent"), which pertains to a "method of electronically exchanging tickets for an event in a secondary market from ticket sellers to ticket buyers located at remote terminals." (D.I. 1; D.I. 48 Ex. A,'809 Patent, at col. 1 lines 59-62) Judge Joseph J. Farnan, Jr. (now retired) conducted a Markman hearing on the disputed claim terms on July 22, 2008. (*See* D.I. 72) On January 19, 2010, Judge Farnan issued a Memorandum Opinion (D.I. 114) and Order (D.I. 115) construing claims of the '809 Patent.

On February 5, 2010, pursuant to Fed. R. Civ. P. 59(e) and Delaware Local Rule 7.1.5, Flash Seats moved for reconsideration and reargument of portions of Judge Farnan's January 19, 2010 claim construction ruling, specifically, the Court's construction, or lack of construction, of

1

the terms "personalized physical material," "presenting," and "bid" as those terms are used in independent Claims 6 and 10. (*See* D.I. 118) On February 22, 2010, Paciolan filed its answering brief in opposition to the Motion to Reconsider (D.I. 119), to which Flash Seats sought leave of the Court to file a reply (D.I. 120).

On March 12, 2010, Paciolan filed its Summary Judgment Motion pursuant to Federal Rule of Civil Procedure 56, seeking summary judgment of non-infringement of the asserted claims of the '809 Patent, and for invalidity of claims 1-5 of the '809 Patent as indefinite under 35 U.S.C. §112, ¶¶ 2 and 6. (*See* D.I. 123) On July 30, 2010, Judge Farnan retired. Thereafter, on August 18, 2010, the case was reassigned to the undersigned judge.

The Court heard argument on April 13, 2011 (*see* Transcript of April 13, 2011 hearing (D.I. 151) (hereinafter "Tr.")).

## II. LEGAL STANDARDS

### A. Motions for Reconsideration or Reargument

The Federal Rules of Civil Procedure do not mention either motions for reconsideration or reargument. *See Brambles USA, Inc. v. Blocker*, 735 F, Supp. 1239, 1241 (D. Del. 1990). Courts often treat such motions as motions to alter or amend a judgment, authorized by Federal Rule 59(e). *See Silva Rivera v. State Ins. Fund Corp.*, 488 F. Supp. 2d 72, 77 (D.P.R. 2007) ("[A]ny motion seeking the reconsideration of a judgment or order is considered as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e) if it seeks to change the order or judgment issued . . . ."); *New Castle Cnty. v. Hartford Accident & Indem. Co.*, 933 F.2d 1162, 1176–77 (3d Cir. 1991), *abrogated on other grounds by Northern Ins. Co. of N.Y. v. Aardvark Assocs., Inc.*, 942 F.2d 189 (3d Cir. 1991) (stating motion for reargument under Delaware's Local Rules is

functional equivalent of a motion to alter or amend under Federal Rule of Civil Procedure 59(e)). "A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). Under no circumstances should reconsideration or reargument be entertained if doing so would not result in ultimate amendment of an order. *See LG Display Co., Ltd. v. AU Optronics Corp.*, 2011 WL 666865, at *1 (D. Del. Feb. 14, 2011); *Schering Corp v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998).

Regardless of their title, motions for reconsideration or reargument are to be granted only sparingly. *See Pirelli Cable Corp. v. Ciena Corp.*, 988 F. Supp. 424, 445 (D. Del. 1998); *Karr v. Castle*, 768 F. Supp. 1087, 1090 (D. Del. 1991); D. Del. LR 7.1.5. The decision to grant such relief lies squarely within the discretion of the district court. *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 419 (D. Del. 1999); *Brambles*, 735 F. Supp. at 1241. These types of motions are granted only if the court has patently misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error not of reasoning but of apprehension. *See Shering Corp.*, 25 F. Supp. 2d at 295; *Brambles*, 735 F. Supp. at 1241; *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983).

Moreover, such motions are not to be used simply to rehash arguments which have been previously briefed by the parties and considered and decided by the Court. *See Corning Inc. v. SRU Biosystems*, 2006 WL 155255, at *3 (D. Del. Jan. 20, 2006); *Schering Corp.*, 25 F. Supp. 2d at 295; *Karr*, 768 F. Supp. at 1093 ("Reconsideration should not be granted where it would merely accomplish repetition of arguments that were or should have been presented to the court

previously."). Thus, "[a] motion for reconsideration is not properly grounded on a request that a court rethink a decision already made." *Biggins v. Willey*, 2011 WL 2470472, at *1 (D. Del. June 21, 2011); *see also Kenexa Brassring, Inc. v. Taleo Corp.*, 751 F. Supp. 2d 735, 763 (D. Del. 2010).

### B. Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## III. DISCUSSION

### A. Timeliness of Plaintiff's Motion to Reconsider

The Court's claim construction Memorandum Opinion and accompanying Order were dated January 19, 2010 and entered on January 20, 2010. (*See* D.I. 114; D.I. 115) Flash Seats filed its Motion to Reconsider on February 5, 2010. Paciolan argues that Plaintiff's motion for reconsideration is untimely and should be denied on that basis. (*See* D.I. 119 at 2) Paciolan cites to Local Rule 7.1.5, which requires a motion for reconsideration to be filed within ten days of the Court's decision – not some 17 days thereafter, as was the case here. (*See id.* at 2-3) Flash Seats contends that its motion was timely filed as it properly had 17 days to file: 14 days (instead of

5

ten, which was the limit under a previous version of the Federal Rules of Civil Procedure) plus three additional days provided by the Court's CM/ECF guidelines. (*See* D.I. 120 at 1-3) Because the Court has reviewed the merits of the Motion to Reconsider and finds the motion to lack merit, the Court will assume, without deciding, that Plaintiff's motion is timely.[1]

## B. Merits of Motion to Reconsider

Reviewing the parties' arguments in light of the applicable legal standards, the Court concludes that Plaintiff has not demonstrated that reconsideration is warranted. As set forth above, the legal standards for reconsideration impose a difficult burden on the moving party and dictate that the type of relief requested by Plaintiff ought to be granted only "sparingly." The burden is particular difficult to meet where, as here, all the evidence and argument made to the Court in connection with the Motion to Reconsider was already before the Court at the time it made its Markman decision. *See, e.g., Eames v. Nationwide Mut. Ins. Co.*, 2008 WL 4455743, at *4 (D. Del. Sept. 30, 2008) ("Regardless of their title, motions for reconsideration or reargument are to be granted only sparingly. They are not to be used simply to rehash arguments which have been previously briefed by the parties and considered and decided by the Court.") (internal citations omitted).

Flash Seats points to three bases for meeting its stringent burden, but each of them fail. First, the Court did not make a clear error of law in concluding that a preferred embodiment disclosed in the specification is not within the scope of the claims. In criticizing the fact that the

---

[1] The Court will also grant Plaintiff's motion for leave to file a limited response in support of its Motion to Reconsider, which provides Plaintiff's response to Defendant's lack of timeliness argument. (D.I. 120) Defendant has had the opportunity to respond to Plaintiff's reply in support of Plaintiff's Motion to Reconsider, both in its opposition to Plaintiff's Leave Motion (D.I. 122) and during the Court's hearing on the motions.

6

Court's construction excluded one of the principal embodiments described in the specification, i.e., the reading of the magnetic stripe on a credit card by a reader, Plaintiff (*see* D.I. 118 at 3; Tr. at 10, 28-29) relies heavily on *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). *Vitronics*, however, is cited and quoted in the Court's Markman opinion. (*See* D.I. 114 at 2, 10) The Court was well aware of the principles contained in *Vitronics* when it reached its conclusion, as it stated. (*See id.* at 10) ("[S]uch constructions are 'rarely, if ever, correct and . . . require highly persuasive evidentiary support . . .' *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). In the Court's view, the prosecution history discussed above constitutes 'highly persuasive evidentiary support.'")). The Court finds no clear error of law.

Flash Seats also suggests that the Court patently misunderstood Plaintiff, in that the Court misunderstood the very purpose of the invention. (*See* D.I. 118 at 2, 5-6; Tr. at 10-11, 77; *see also* D.I. 120)[2] The Court disagrees. In its Markman opinion, the Court (accurately) explained that the purpose of the invention is "event ticketing that does not utilize paper tickets." (D.I. 114 at 1; *see also* D.I. 118 at 2 (Flash Seats itself describing "a central purpose of the invention, which is to facilitate the ticket buying and selling process by eliminating the usual step of delivering the purchased ticket to the buyer," and "the idea central to the invention, i.e., that the electronic sale and purchase of tickets excludes the step of delivering from the seller to the buyer a physical or tangible ticket")) Moreover, even Plaintiff concedes that the Court "issued a very thoughtful opinion," and "[n]inety percent of the opinion we're not quibbling with or contesting"

---

[2]This is consistent with Plaintiff's insistence that, for most of the prosecution history, the PTO Examiner misunderstood the patent, and that Defendant misunderstands the patent. (*See, e.g.*, D.I. 118 at 7 ("[I]t took several rounds of negotiations for the Examiner to understand the nature of the invention, and it took several more rounds of discussion for the Examiner to understand that the scope of the invention comports with the requirements of Section 112."))

7

(Tr. at 10), which would seem difficult for the Court to do if it patently misunderstood the invention. In any event, this argument is largely a repetition of Plaintiff's *Vitronics* point – Plaintiff finds any construction that excludes a preferred embodiment to be based on a misunderstanding of the patent – a point with which the Court disagrees, as already explained.

Third, Plaintiff devotes most of its argument in the Motion to Reconsider on the claim that the Court "misapprehended" the prosecution history. (*See* D.I. 118 at 3-4; Tr. at 29-30, 44) Specifically, Plaintiff interprets the Court's Markman opinion as being based upon a finding of a prosecution history disclaimer. (*See* Tr. at 13) Plaintiff contends that the Court found such a disclaimer on the basis of prosecution history that was actually addressed to Section 112 concerns voiced by the Examiner, not Section 103 concerns, and is not a permissible basis for finding a disclaimer. (*See* Tr. at 13) The Court disagrees.

As an initial matter, Plaintiff's argument is more accurately characterized as one of disagreement, rather than "misapprehension." (*See* Tr. at 44) (defense counsel explaining: "the concept of misapprehension is [you] didn't understand something, just didn't understand what a party was saying rather than understanding what a party was saying and disagreeing with them"). Here, the Court interpreted the prosecution history differently than Plaintiff interpreted it. But the Court plainly did examine the prosecution history and thoroughly explained its interpretation of it. (*See* D.I. 114 at 7-12) This is not misapprehension. *See eSpeed, Inc. v. Brokertec USA, L.L.C.*, 342 F. Supp. 2d 244, 255 (D. Del. 2004) (describing distinction between misapprehension and disagreement in context of claim construction).

Moreover, any fair reading of the prosecution history reveals that it has portions addressing Section 103 concerns *and* portions addressing Section 112 concerns. (*Compare, e.g.*,

D.I. 118 at 13-14 (Plaintiff's quotation of passages from prosecution history such as "[o]n May 13, 2002, the Examiner issued yet another Office Action, in which he continued to reject the claims as obvious, stating that the fact that the tickets of the invention were 'paperless' was not sufficient to distinguish them from Gebb and Goheen," and "[e]xaminer also notes that applicant's specification provides no support for gaining access to an event without providing some physical form of authentication data.") *with* Tr. at 45-46 (defense counsel explaining: "So there is a written description argument in there, but what the written description argument shows that Judge Farnan pointed to is that Flash Seats understood that the thing they were trying to limit it to was something that didn't have physical materials, such as ID cards, and whether or not they could even have a claim that did that. Judge Farnan pointed to this not as support – not as an express disclaimer. He pointed to this as support to confirm his understanding that that was what was going on in this file history.")) Additionally, prosecution history disclaimer was not the only grounds upon which the Court relied in rejecting Plaintiff's proposed construction. For example, the Court also found that Plaintiff's proposed construction of the term "personalized physical material" was inconsistent with the ordinary meaning of such term, as it "[did] not in any way embody the concept of "personalization." (D.I. 114 at 6-7)

Accordingly, Plaintiff's Motion to Reconsider is denied.

### C. <u>Motion for Summary Judgment</u>

Defendant seeks summary judgment of non-infringement of the asserted claims of the '809 Patent, and for invalidity of claims 1-5 of the '809 Patent as indefinite under 35 U.S.C. §112, ¶¶ 2 and 6. (*See* D.I. 123) The Court will grant Defendant's Summary Judgment Motion.

1. **<u>Non-infringement</u>**

When an accused infringer moves for summary judgment of non-infringement, such relief may only be granted if one or more limitations of the claim in question does not read on an element of the accused product, either literally or under the doctrine of equivalents. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005): *see also Techsearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) ("Summary judgment of non-infringement is . . . appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial."). Thus, summary judgment of non-infringement can only be granted if, after viewing the facts in the light most favorable to the non-movant, there is no genuine issue whether the accused product is covered by the claims. *See Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

As summarized by Defendant, each of the independent claims of the '809 Patent describes a *paperless* ticketing system that requires a ticket holder to gain access to an event "without presenting a personalized physical material." (D.I. 124 at 1) (emphasis added) During claim construction, the parties disputed whether or not "the presentation of credit cards or driver's license for admission to an event would fall within the scope of the claims." (D.I. 114 at 6; *see also* D.I. 124 at 1) As set forth in the Court's Opinion, the issue was whether the phrase "'personalized physical material' is broad enough to encompass items such as a credit card or driver's license." (D.I. 114 at 6; D.I. 124 at 1) The Court ultimately found that the "claims should *not* be understood to encompass granting access to an event through the presentation of a credit card or driver's license" and construed "personalized physical material" to mean "physical

10

material bearing or containing information specific to an individual ticket holder." (D.I. 124 at 1 (emphasis added); *see* D.I. 114 at 10)

Defendant submits that Judge Farnan's ruling is "fatal" to Flash Seats's infringement claims. (*See* D.I. 124 at 1) It is undisputed that in the Paciolan accused systems that have been sold and used a ticket holder must present either a paper ticket or a personal identification card, such as a credit card or student identification card. (D.I. 124 at 1-2; *see also id.* at 4-10; D.I. 126, Stephanson Decl., ¶ 3; D.I. 135, Kursh Decl., App'x A at 12-13; D.I. 135 at 1-8) Hence, the Court agrees with Defendant that because the claims of the '809 Patent do not cover systems that require either paper tickets or personal identification cards to gain access to an event, they do not cover Paciolan's system.

Plaintiff complains that Paciolan improperly focuses on just one aspect of Plaintiff's infringement allegations and "does not address other aspects of infringement such as its offers to sell its infringing system, which are broader in scope than the use contentions." (*Id.*) As Paciolan points out, however, its motion is "broadly directed to the fact that the *system itself* does not infringe." (D.I. 135 at 1) Paciolan accurately states that "[t]here is no factual dispute about how Paciolan's system operates or the fact that it requires either a paper ticket or a personal identification card to gain access to an event." (*Id.*) Moreover, the Court agrees with Defendant that "there has never been any allegation that Paciolan sells or offers to sell anything different from what it uses." (Tr. at 58; *see also* D.I. 132, Kursh Decl., ¶ 26; D.I. 135 at 2-4; *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1260 (Fed. Cir. 2000) (Judge Newman stating in concurring opinion that "an offer to sell a device or system whose actual sale can not infringe a United States patent is not an infringing act under § 271")).

Flash Seats also asserts that Paciolan's motion "must be rejected because it has failed to address . . . selling and offering for sale systems that allow for access with wireless and infrared devices." (D.I. 131 at 2) Paciolan, however, contends that such argument is improper because Flash Seats had not before advanced any infringement theory based on infrared or RFID devices. (*See* D.I. 135 at 1-2, 6; Tr. at 89) Moreover, Paciolan submits, even if Plaintiff had offered such a contention, "infrared scanners are used to read bar coded paper tickets (which are not covered by the claims) and there is no evidence that Paciolan ever sold or offered for sale any RFID devices – because it hasn't." (D.I. 135 at 2, 7; *see also* D.I. 150) As noted by Paciolan, the only evidence offered by Flash Seats in support of its contention is an excerpt from an undated "Paciolan FAQ".[3] (D.I. 135 at 7) But all this excerpt says is that the Paciolan software *could be used* with an RFID system. It does not say that Paciolan sells RFID systems or offers them for sale. (*See* Supp. Stephanson Decl., ¶ 2 (Paciolan has never sold or offered RFID for sale and knows of no customers who have ever used such in connection with Paciolan's products)) Not only has Plaintiff failed to produce evidence that Paciolan ever sold, or offered for sale, an RFID system, or that a customer used such a system, but the Court agrees with Paciolan that the

---

[3]The "Paciolan FAQ" reads:

> *If so do you have membership cards? If so, are they RFID or barcode based?
>
> Yes, we have membership cards and use them for access management. For example, this could be a student ID, or a special season pass. *Currently they are either barcode or mag stripe,* but the software is agnostic concerning what reads the ID as it is presented. There is no reason why it could not be RFID.

(D.I. 132 ¶ 27 and Ref. Nos. 3 & 16 (PAC00477376) (emphasis added))

undated, untitled "Paciolan FAQ" at best merely represents a hypothetical or theoretical possibility – it is neither persuasive evidence nor is it tantamount to an offer to sell. (*See* Tr. at 89)

Flash Seats next argues that Paciolan's motion should be denied because the '809 Patent's claims cover the use of a credit card to gain access to an event. (*See* D.I. 131 at 9-10) This argument appears to turn on Flash Seats' now-preferred construction of the claim term "presenting" (*see* Tr. at 77-78, 84) – which is not what Flash Seats proposed during claim construction, nor is it a construction Judge Farnan adopted (*see* Tr. at 59-62). Instead, Judge Farnan already ruled that "[i]n view of [the] prosecution history, the Court concludes that the claims should not be understood to encompass granting access to an event through the presentation of a credit card or driver's license." (D.I. 114 at 10; *see* D.I. 135 at 1) The Court agrees with Paciolan that "Flash Seats cannot avoid summary judgment by asserting that the claims cover something that the Court has ruled that they do not cover." (D.I. 135 at 1)

Having reviewed the facts in the light most favorable to Plaintiff, the Court finds there is no genuine issue as to whether use of the accused system is covered by the claims of the '809 Patent. Summary judgment of non-infringement is, therefore, appropriate.

### 2. **Indefiniteness**

Defendant has also moved for summary judgment of invalidity of claims 1-5 of the '809 Patent due to indefiniteness, under 35 U.S.C. § 112, ¶¶ 2 and 6, on the grounds that these claims contain means-plus-function limitations that lack corresponding structure in the specification. (*See* D.I. 114 at 32-49; D.I. 124 at 2) Pursuant to 35 U.S.C. § 112, "an element in a claim for a combination may be expressed as a means or step for performing a specified function without the

recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material or acts described in the specification and equivalents thereof." Section 112, ¶ 6 applies only to "purely functional limitations that do not provide the structure that performs the recited function." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1004, 1023 (Fed. Cir. 2006). "[I]f one employs means-plus-function language in a claim, one must set forth in the specification an adequate disclosure showing what is meant by that language," and "[i]f the specification does not contain an adequate disclosure of the structure that corresponds to the claimed function, the patentee will have failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112, which renders the claim invalid for indefiniteness." *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1382 (Fed. Cir. 2009) (internal quotation marks and citations omitted). "A determination that a patent claim is invalid for failure to meet the definiteness requirement of 35 U.S.C. § 112, paragraph 2, is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims . . . ." *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 949 (Fed. Cir. 2007) (internal quotation marks omitted).

Here, the parties agreed that Claims 1-5 should be construed as means-plus-function terms pursuant to Section 112, ¶ 6. (*See* D.I. 114 at 32) In his claim construction ruling, Judge Farnan found that Claim 1 contained several means-plus function limitations that lacked corresponding structure in the specification. Specifically, the Court found that the specification did not set forth corresponding structures for the following limitations: (i) "means for associating the paperless tickets with authentication data of the ticket seller" (D.I. 114 at 33-38; D.I. 115 at 3); (ii) "means for reassociating the paperless tickets with authentication data of the ticket buyer"

(D.I. 114 at 45-47; D.I. 115 at 4); (iii) "means for comparing the bid to the asks" (D.I. 114 at 48-49; D.I. 115 at 4); and (iv) "means for completing a transfer of the paperless tickets when the bid price equals the ask price and the ask quantity is equal to or greater than the bid quantity" (D.I. 114 at 38-39; D.I. 115 at 3). In light of such rulings, the Court agrees with Defendant that Claim 1 and its dependent claims (i.e., Claims 2-5) are invalid as indefinite under 35 U.S.C. § 112, ¶¶ 2 and 6.

## IV. **CONCLUSION**

For the reasons set forth above, the Court will deny Plaintiff's Motion to Reconsider. In addition, the Court will grant Plaintiff's Leave Motion as well as Defendant's Summary Judgment Motion with respect to non-infringement and indefiniteness.

A separate Order, consistent with this Memorandum Opinion, will be entered.